UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MARIE SPEZZANO, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| THE HUNTINGTON NATIONAL BANK and ENDPOINT RESOLUTION SERVICES, LLC, | ) ) ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**Nature of this Action**

1. Marie Spezzano ("Plaintiff") brings this action against Huntington National Bank ("Huntington") and Endpoint Resolution Services, LLC ("ERS") (collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

2. Defendants violated the TCPA and FDCPA by repeatedly calling Plaintiff's cellular telephone to collect a debt that is allegedly owed by a third party, whom Plaintiff does not know or associate with, and by repeatedly ignoring Plaintiff's requests that they cease calling her cellular telephone.

3. More specifically, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system or an artificial or prerecorded voice to place non-emergency calls to telephone numbers assigned to a cellular telephone service, without prior express consent.

4. And Endpoint, as a debt collector retained by Huntington, violated and continues to violate the FDCPA, which prohibits the use of any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, and prohibits the attempted collection of debts not authorized by agreement or law. 15 U.S.C. §§ 1692d,

1

1692e(2)(A), 1692e(10).

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction under 47 U.S.C. § 227(g)(2), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

6. Venue is proper before this Court under 28 U.S.C. § 1391(b) as the acts and transactions giving rise to Plaintiff's action occurred, in part, in this district, Defendants transact business in this district, and as Plaintiff resides in this district.

## Parties

7. Plaintiff is natural person who at all relevant times resided in The Woodlands, Texas.

8. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

9. Huntington is a banking association headquartered in Columbus, Ohio.

10. Huntington is the principal subsidiary of Huntington Bancshares Inc., which is also headquartered in Columbus Ohio, and incorporated in Maryland.

11. Huntington is a national bank "engaged in providing full-service commercial, small business, consumer banking services, mortgage banking services, automobile financing, recreational vehicle and marine financing, equipment leasing, investment management, trust services, brokerage services, customized insurance programs, and other financial products and services. Huntington's banking offices are located in Ohio, Illinois, Michigan, Pennsylvania, Indiana, West Virginia, Wisconsin and Kentucky."[1]

---

[1] https://www.sec.gov/Archives/edgar/data/49196/000004919618000008/hban2017-12x31x10k.htm (last visited November 20, 2018).

12. Endpoint is a corporation headquartered in Buffalo, New York, and incorporated in New York.

13. Endpoint is an "Account Receivable Management Company" that acts as a debt collector for entities such as Huntington.

14. Endpoint is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

15. Endpoint is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

**Factual Allegations**

16. Plaintiff has been the sole subscriber to her cellular telephone number—(752) 206-XXXX—for at least ten years.

17. Approximately two years ago, Plaintiff began receiving frequent calls from Huntington.

18. Plaintiff received approximately six calls from Huntington every month, and Huntington frequently left voicemails on her cellular telephone.

19. Huntington placed its calls to Plaintiff's cellular telephone number in an effort to collect a debt from a non-party to this matter—a man named Andre Sullivan—who allegedly owed a debt to Huntington.

20. Plaintiff does not know, and has no known connection to, Mr. Sullivan, nor was she ever a customer of Huntington.

21. Huntington placed most, if not all, of its calls to Plaintiff's cellular telephone number from either (877) 477-6855 or (800) 356-9493—telephone numbers assigned to Huntington.

22. On several occasions, Plaintiff answered calls that Huntington placed to her cellular telephone.

23. On one occasion, approximately 15 months ago, Plaintiff answered a telephone call from Huntington and informed Huntington that (1) she was not Andre Sullivan; (2) she did not know any person named Andre Sullivan; (3) Huntington was calling her personal cellular telephone; and (4) she had exclusive use of that cellular telephone number for at least ten years.

24. Plaintiff also instructed Huntington to cease calling her cellular telephone number and update its records to reflect that she was a "wrong number."

25. In response, however, the Huntington representative stated that she could not honor Plaintiff's request and could not update the account information associated with Plaintiff's cellular telephone number.

26. So despite Plaintiff's request, Huntington continued to call her cellular telephone.

27. After several months and dozens of repeated telephone calls, Plaintiff again answered a telephone call from a Huntington representative, and again reiterated that Huntington was calling the wrong number, and again instructed Huntington to cease calling her cellular telephone.

28. But despite Plaintiff's request, Huntington continued to call her cellular telephone, and suggested that Plaintiff submit a separate "cease and desist" request to a different department of Huntington.

29. Frustrated with Huntington's failure to respect her repeated requests that it cease calling her, Plaintiff submitted a complaint to the Consumer Financial Protection Bureau ("CFPB").

30. On January 28, 2018, Huntington submitted a response to Plaintiff's CFPB complaint, which included an apology to Plaintiff. *See* Exhibit A.

31. Significantly, through its response, Huntington admitted "that due to an inadvertent error, your mobile telephone number was associated with a profile that did not belong to you. On January 18, 2018, Huntington removed your mobile telephone number from our call list. We sincerely apologize for any inconvenience this matter may have caused." *Id.*

32. However, much to Plaintiff's frustration, instead of ceasing its attempts to collect from Plaintiff an account Huntington knew was not associated with her, it instead retained Endpoint, a debt collection firm, to continue placing telephone calls to Plaintiff's cellular telephone.

33. Beginning on or around June 25, 2018, Plaintiff began receiving weekly telephone calls from Endpoint from multiple telephone numbers, including (716) 748-8964, (847) 232-7140, (414) 434-2414, and (347)-293-1167.

34. Each of the telephone calls Endpoint placed to Plaintiff's cellular telephone were made using an artificial or prerecorded voice, and did not provide any option or prompt to speak to an Endpoint representative.

35. Each of Endpoint's telephone calls to Plaintiff's cellular telephone played a message asking for Andre Sullivan to call Endpoint at (844) 786-7790 about his account, and providing a file number—DF61059—that is ostensibly associated with Mr. Sullivan's alleged account with Huntington.

36. Despite already placing several dozen telephone calls to Plaintiff's cellular telephone, Endpoint continues to place telephone calls to Plaintiff's cellular telephone to the present day, at a rate of approximately one telephone call each week.

37. Plaintiff is not, nor was, one of Huntington's customers.

38. Plaintiff does not have, nor did she ever have, a business relationship with Huntington.

39. Plaintiff did not provide Defendants with her cellular telephone number.

40. Plaintiff did not owe any debt to Huntington.

41. In light of the frequency, number, nature, and character of the calls at issue, Defendants placed calls to Plaintiff's cellular telephone number by using an automatic telephone dialing system.

42. In light of the frequency, number, nature, and character of the calls at issue, Defendants placed calls to Plaintiff's cellular telephone number by using equipment which has the capacity (i) to store or produce telephone numbers to be called, using a random or sequential number generator, and (ii) to dial such numbers.

43. In light of the frequency, number, nature, and character of the calls at issue, Defendants placed calls to Plaintiff's cellular telephone number by using hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

44. In light of the frequency, number, nature, and character of the calls at issue, Defendants placed calls to Plaintiff's cellular telephone number by using equipment which has the capacity—(i) to store numbers to be called or (ii) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person).

45. Plaintiff did not give Defendants prior express consent to place calls to her cellular telephone number by using an automatic telephone dialing system or an artificial or prerecorded voice.

46. Defendants placed calls to Plaintiff's cellular telephone number for non-emergency purposes.

47. Defendants placed calls to Plaintiff's cellular telephone number voluntarily.

48. Defendants placed calls to Plaintiff's cellular telephone number under their own free will.

49. Defendants had knowledge that they were using an automatic telephone dialing system or an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number.

50. Defendants intended to use an automatic telephone dialing system or an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number.

51. Plaintiff suffered actual harm as a result of Defendants' calls in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

52. Moreover, Defendants' calls unnecessarily tied up Plaintiff's cellular telephone line.

### Count I
### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)
### Against Defendants

53. Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-52.

54. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system to place non-emergency calls to Plaintiff's cellular telephone number, absent prior express consent.

55. Defendants separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with placing non-emergency calls to Plaintiff's cellular telephone number, absent prior express consent.

56. Huntington provided Plaintiff's cellular telephone number to Endpoint for the purpose of having Endpoint call her telephone number.

57. Defendants' calls to Plaintiff were for the purpose of attempting to collect an obligation alleged to be owed to Huntington by a third party.

58. Defendants continued to place calls to Plaintiff's cellular telephone after Plaintiff stated that she was not the party that Defendants were attempting to call, and after Plaintiff informed Defendants that they should stop placing calls to her cellular telephone.

59. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff is entitled to damages in an amount to be proven at trial.

### Count II
### Violation of 15 U.S.C. § 1692e(2)
### Against Defendant Endpoint

60. Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-52.

61. The FDCPA at 15 U.S.C. § 1692e provides, in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of—

(A) the character, amount, or legal status of any debt.

62. The repeated telephone calls from Endpoint to Plaintiff's cellular telephone were made in connection with an attempt to collect an alleged debt from Plaintiff, despite it being owed by a third party Plaintiff does not know.

63. At the time Endpoint pursued the alleged debt for collection, it was, upon information and belief, considered to be in default.

64. By attempting to collect a sum that Plaintiff did not owe, however, Endpoint used unfair and unconscionable means to collect or attempt to collect the alleged debt.

65. And by attempting to collect a sum that Plaintiff did not owe, Endpoint falsely represented to Plaintiff that she owed the alleged debt.

66. As a result, Endpoint violated 15 U.S.C. § 1692e(2)(A).

67. The harm suffered by Plaintiff is particularized in that the violative debt collection calls at issue were made to her personally, regarding a debt she was alleged to owe, and unfairly and unconscionably tried to collect a debt that Plaintiff did not owe.

68. Likewise, Endpoint's actions created a concrete harm in that they constituted a debt collection practice that Congress specifically prohibited.

### Count III
### Violation of 15 U.S.C. § 1692e(10)
### Against Defendant Endpoint

69. Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-52.

70. The FDCPA at 15 U.S.C. § 1692e provides, in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

71. The repeated telephone calls from Endpoint to Plaintiff's cellular telephone were made in connection with an attempt to collect an alleged debt from Plaintiff, despite it being owed by a third party Plaintiff does not know.

72. At the time Endpoint pursued the alleged debt for collection, it was, upon information and belief, considered to be in default.

73. By attempting to collect a sum that Plaintiff did not owe, however, Endpoint used unfair and unconscionable means to collect or attempt to collect the alleged debt.

74. And by attempting to collect a sum that Plaintiff did not owe, Endpoint falsely represented to Plaintiff that she owed the alleged debt in order to collect payment on the alleged debt.

75. As a result, Endpoint violated 15 U.S.C. § 1692e(10).

76. The harm suffered by Plaintiff is particularized in that the violative debt collection calls at issue were made to her personally, regarding a debt she was alleged to owe personally, and unfairly and unconscionably tried to collect a debt that Plaintiff did not owe.

77. Likewise, Endpoint's actions created a concrete harm in that they constituted a debt collection practice that Congress specifically prohibited.

## Count IV
### Violation of 15 U.S.C. § 1692d
### Against Defendant Endpoint

78. Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-52.

79. Endpoint violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of a debt, in that Endpoint repeatedly placed calls to Plaintiff's cellular telephone number in attempts to collect a consumer debt that she does not owe.

**Trial by Jury**

Plaintiff is entitled to, and hereby demands, a trial by jury.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging and declaring that Huntington violated 47 U.S.C. § 227(b)(1)(A)(iii);

b) Adjudging and declaring that Endpoint violated 47 U.S.C. § 227(b)(1)(A)(iii);

c) Adjudging and declaring that Endpoint violated 15 U.S.C. §§ 1692d, 1692e(2)(A), and 1692e(10).

d) Enjoining Defendants from continuing to place calls to Plaintiff's cellular telephone number;

e) Awarding Plaintiff damages under 47 U.S.C. § 227(b)(3)(B);

f) Awarding Plaintiff treble damages under 47 U.S.C. § 227(b)(3)(C);

g) Awarding Plaintiff damages under 15 U.S.C. § 1692k;

h) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses, pursuant to 15 U.S.C. § 1692k;

i) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

Date: January 2, 2019

/s Aaron D. Radbil
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
106 East Sixth Street, Suite 913
Austin, Texas 78701
Phone: (512) 322-3912
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Alexander D. Kruzyk
Greenwald Davidson Radbil PLLC

5550 Glades Road, Suite 500<br>
Boca Raton, Florida 33431<br>
Tel: (561) 826-5477<br>
Fax: (561) 961-5684<br>
akruzyk@gdrlawfirm.com

Counsel for Plaintiff